IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| STANLEY GREEN,  )<br>  )<br>  )<br>     **Plaintiff,**  )<br>  )<br>     v.  )<br>  )<br>YOUNG MI DREADEN, *et al.*,  )<br>  )<br>  )<br>     **Defendants.**  )<br>_____) | CIVIL ACTION NO. 5:20-cv-195 (MTT) |

**ORDER**

Plaintiff Stanley Green alleges that he entered the Georgia Diagnostic and Classification Prison ("GDCP") on March 27, 2018. Doc. 1 ¶ 15. An initial medical screening by Georgia Department of Corrections (GDC) personnel revealed that Green had numerous health issues, including four amputated toes, peripheral vascular disease, and diabetes. *Id*. ¶¶ 16-20, 26. He was also recommended for enrollment in the prison's diabetic program. He was enrolled in a special care program for chronic illnesses, overseen by Defendants Dr. Burnside, Dr. Fogam, Dr. Fowlkes, and Nurse Dreaden. *Id*. ¶¶ 26-28.

Around April 4, 2018, Green noticed a small cut on one of his toes and sought medical attention. *Id*. ¶ 48. On April 26, 2018, he met with Nurse Lawson, showed her the cut, and informed her that due to his chronic illnesses and history of toe amputations, he needed immediate treatment. *Id*. ¶ 50. In response, Lawson ordered 14 days of antibiotics and urgent consultation with podiatry. *Id*. ¶ 53. The consultation with podiatry did not happen. Despite the antibiotic, Green's foot began to "look[] badly

infected." *Id.* ¶ 56. Approximately fourteen days after Green's visit to Lawson, the infected area was "emitting a foul stench[] and oozing green pus." *Id.* ¶ 57. Green requested to see a medical professional, reminded prison staff of his history of amputations, and described his infection as an emergency. *Id.* ¶¶ 57-58. Nothing happened for over a week. *Id.* ¶ 59.

On May 22, 2018, Green saw Nurse Dreaden. *Id.* ¶¶ 60-61. Green showed her his infected toe, described the smell, and told her the infection had not responded to oral antibiotics. *Id.* ¶¶ 63-69. Dreaden gave him gauze, a crutch, and some ibuprofen. *Id.* ¶ 68. She also told him to elevate his foot and try not to walk too much, and she sent him back to general population. *Id.* ¶ 74, 76.

Green alleges that after he returned to general population, "his foot kept throbbing," his "socks started filling up with blood from his infected toe," and he submitted sick calls and "begged his unit manager to see a doctor." *Id.* ¶¶ 79-82.

On approximately June 6, 2018, Green was taken back to medical, where he saw Dr. Burnside. *Id.* ¶¶ 83-84. Burnside noted that Green had a "high risk of losing [his] foot" and ordered a follow-up in three weeks. *Id.* ¶¶ 86-87. It is unclear what, if any, treatment Burnside prescribed. Approximately nine days later, Green was rushed to the hospital with sepsis, where his lower right leg was amputated. *Id.* ¶ 88.

Green alleges that Defendants Dreaden and Burnside failed to provide necessary medical treatment; that Defendants Fogam and Fowlkes consulted with Burnside about Green's foot and failed to provide necessary medical care; that GDC and Georgia Correctional Healthcare (GCHC) failed to properly train Dreaden, Burnside, Fogam, and Fowlkes; that Defendant Dr. Zimmerman allegedly reviewed an x-ray of

Green's foot (the complaint does not say when), missed an indication of a severe problem, and failed to order an MRI; and that Zimmerman's employer, Global Diagnostic, is vicariously liable for Zimmerman's conduct.  *Id.* ¶¶ 41, 118, 42-43, 126.

Green brings claims for (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants Dreaden, Burnside, Fogam, and Fowlkes, in their individual capacities; (2) state-law "Ordinary Negligence, Gross Negligence — Medical Malpractice" claims against Defendants Dreaden, Burnside, Fogam, Fowlkes, and Zimmerman, in their individual capacities; (3) "Supervisory Liability-Federal Claim"[1] against Defendants John Does 1 and 2, GCHC, and GDC; (4) "Deliberate Indifference to Diabetic Medical Care by Failing to Train" against GCHC and GDC; and (5) respondeat superior liability, presumably for state law negligence claims, against Defendant GDS based on Zimmerman's conduct.

The Defendants filed three motions to dismiss.  First, GDC and GCHC move to dismiss, arguing the claims against them are barred by sovereign immunity.  Docs. 18; 18-1.  In response, Green "consent[ed] to the dismissal of Counts III and IV against GDC and GCHC."  Doc. 24.  The Court agrees those claims are barred by sovereign immunity.  Those were the only counts against GDC and GCHC.  Doc. 1 at 33; 34; 36; 38; 43.  Accordingly, GDC and GCHC's motion to dismiss (Doc. 18) is **GRANTED**, and the claims against them are dismissed as barred by sovereign immunity.  The motion does not address the claims against the John Does, fictional employees with GCHC and GDC who were allegedly responsible for training Defendants Burnside, Fogam, and Fowlkes.  But those claims are not sufficiently specific to identify and serve those

---

[1] This is not an artfully pleaded count, but it appears to rely on a failure to train theory.

defendants. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted) (explaining that fictitious party pleading is not generally allowed in federal court unless the description of the defendant is so specific that service could be made on the individual). Any remaining claims against these Defendants are, therefore, **DISMISSED** without prejudice.

Second, Defendant Global Diagnostic Services moves to dismiss the claims against it, arguing that Zimmerman was not its employee, but an independent contractor, and that Zimmerman was not acting as its agent. Doc. 26. That motion is opposed. Doc. 33.

Finally, Defendants Young Mi Dreaden, Edward Hale Burnside, Eric Fogam, and Joseph Fowlkes move for partial judgment on the pleadings. Doc. 29-1. Specifically, they argue that Green's negligence claims against them are barred by sovereign immunity. *Id.* at 2-3. That motion is also opposed. Doc. 34. The Court considers both motions in turn.

## I. GDS'S MOTION TO DISMISS

### A. Standard

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual

allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

**B. Analysis**

GDS argues Zimmerman was not its employee, but an independent contractor. Doc. 26 at 3. In support of that contention, they attach to their motion an alleged contract between GDS and Georgia Imaging Associates, P.C. Doc. 26-1. The contract clearly stipulates that it is "an agreement for independent contracting services" and that GDS would not provide Zimmerman any benefits. Doc. 26-1 at 2. There is also some language suggesting the contract applies only to services in Florida, which may limit its relevance to the pending motions. *Id.* at 1. GDS also points out that the contract does

not give it the right to control the time, manner, and method of Zimmerman's work. Doc. 26 at 3; *see Holmes v. Univ. Health Serv., Inc.*, 205 Ga. App. 602, 603, 423 S.E.2d 281, 282 (1992) ("The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.") (quotation marks and citation omitted). They also argue that Zimmerman was not an agent of GDS. Doc. 26 at 4-5. Their only argument for that is that Green cannot establish *apparent* agency.[2] *Id*. However, they do not address whether Zimmerman actually acted as an agent for GDS and, if so, whether GDS would be liable for Zimmerman's actions under an agency theory.[3]

In response, Green argues the contract between Zimmerman and GDS fails to show, as a matter of law, that Zimmerman was not an employee. Doc. 33 at 5-8.[4] That is for several reasons: first, it is unclear whether the contract is a complete agreement. Doc. 26-1 at 1-2; *see* Doc. 33 at 6. Second, the attached contract was not verified.

---

[2] Apparent agency is only one of several ways a plaintiff can establish that the principal is liable for the alleged agent's actions. The doctrine of apparent agency typically arises when an alleged wrongdoer is not actually the alleged principal's agent, but the alleged principal represented that the wrongdoer was its agent and the plaintiff relied on that representation. *Kissun v. Humana, Inc.*, 267 Ga. 419, 420, 479 S.E.2d 751, 752 (1997). The Plaintiff here does not appear to rely on an apparent agency theory, so the relevance of GDS's argument on this point is limited.

[3] They appear to rely on their argument that Zimmerman is not an employee. But an employee-employer relationship and a principal-agency relationship are not always the same thing. There are many situations where a principal may be liable for the torts of an agent even absent an employer-employee relationship. *See* GA. LAW OF TORTS § 15:22 ("Sixth, the employer is liable for the torts of a contractor if the employer retains the right to direct or control the time and manner of executing the work, [among other bases of liability]."). That is not to say the Plaintiff necessarily alleged other bases of liability or that he could have alleged other bases of liability—only that employment and agency are not necessarily the same thing, and GDS's brief addresses only the issue of employment.

[4] He also argues that Rule 21 of the Federal Rules of Civil Procedure prohibits granting GDS's motion. Green's interpretation of Rule 21 is wholly novel, and there is not reason to address it. See Doc. 33 at 4-5.

Doc. 33 at 6-7.  Third, it is silent as to whether GDS controls the time, manner, and method of Zimmerman's work.  *Id.* at 3.  Fourth, the agreement was executed in 2008 for a renewable one-year term; there is no evidence it was in effect at the time of the allegations in the complaint.  Fifth, and at this point most significantly, it is generally not appropriate to consider evidence in a motion to dismiss.[5]

In reply, GDS requests that the Court "CONVERT its Motion to Dismiss to a Motion for Summary Judgment."  Doc. 37 at 3.  It attaches an affidavit from Zimmerman stating that GDS did not control his hours, lend him equipment, give him benefits, or instruct him on how to practice medicine.  In the view of GDS's counsel, "Thanks to Dr. Zimmerman's Affidavit, Plaintiff now has the answers he seeks, and all those answers conclusively establish as a matter of law that no liability can exist as to [GDS] in this case."  Doc. 37 at 3.  Truly, that is what the brief says.  Litigation would indeed be efficient if parties could skip discovery, avoid cross examination of their witnesses, and render facts undisputed by merely filing an affidavit, particularly when that affidavit is first filed with a reply brief.  But that "efficient" process exists, at least in this country, only in the minds of those unfamiliar with rules of procedure or those who hope their opponents are.

Whether to convert a motion to dismiss into a motion for summary judgment is a matter for the Court's discretion.  *Harper v. Lawrence Cty., Ala.*, 584 F.3d 1030, 1035 (11th Cir. 2009), *superseded on other grounds,* 592 F.3d 1227 (11th Cir. 2010).  The Court declines to convert the motion to dismiss, for several reasons.  First, GDS should have moved for summary judgment in its original brief, which would have saved all a lot

---

[5] There are exceptions, but GDS did not argue them.

-7-

of time because the easy answer to that would be to let the parties conduct discovery. Moreover, as the Court understands it, GDS's only remaining argument is based on the newly filed affidavit. The issues raised by that affidavit are considerably different from those raised by the original brief. If GDS had moved for summary judgment at the outset, at least Green could have responded to GDS's factual claims.

Second, the affidavit is not necessarily dispositive of GDS's liability. Evidence that GDS did not lend Zimmerman equipment or dictate his hours is certainly relevant to the employment inquiry, but it is not dispositive.

Third, GDS does not address any of the problems with the 2008-2009 contract (Doc. 26-1) identified by Green. GDS argues that the Court can nonetheless "consider both the contractor agreement and Dr. Zimmerman's affidavit – for the sake of judicial economy, it *should* consider both[.]" That argument does not at all address the numerous deficiencies with the contract GDS filed. As the proponent of the evidence, it is GDS's duty to show the contract is admissible, relevant, and probative of the actual relationship between Zimmerman and GDS.[6]

Fourth, discovery will allow the issue of GDS's relationship to Zimmerman to be better developed. The parties can identify the applicable contract between GDS and Zimmerman, along with any other relevant documents, and conduct depositions.

For those reasons, the Court does not convert GDS's motion to one for summary judgment. It does not consider the contract—the relevance of which is not at all established—nor the affidavit. GDS's only argument that does not rely on those

---

[6] Granting summary judgment based on non-relevant, inadmissible evidence, without addressing numerous remaining legal issues, and without giving the non-moving party opportunity to respond, would typically create an appeal and remand—hardly conducive to "judicial economy." Rather, judicial economy would have been better served if GDS had used the reply brief to respond to Green's arguments.

documents is its apparent agency argument.  And again, that argument is of limited relevance, for the reasons already noted.  GDS has failed to show any ground for dismissing Green's claims against it.  Accordingly, its motion to dismiss (Doc. 26) is **DENIED**.

## II. THE INDIVIDUAL DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### A. Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001)).  A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion.  *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) ("When reviewing judgment on the pleadings, we must take the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party.").

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir.

2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

**B. Analysis**

Defendants Dreaden, Burnside, Fogam, and Fowlkes move for judgment on the pleadings regarding the state-law claims only.  Doc. 29.  They principally argue that the Georgia Tort Claims Act bars negligence claims against them and that the Act requires the employer entity be substituted for the individual Defendants on those claims.  *Id.* at 4-5.  In response, the Plaintiff argues he pleaded that the four Provider Defendants were employees of GCHC, which was an independent contractor with GDC.  Doc. 34 at 4-5 (citing Doc. 1 at 4-6).[7]  That is true as to Dreaden, Burnside, and Fogam—all allegedly employed by GCHC—but not Fowlkes.  Doc. 1 ¶¶ 3-5.  The Plaintiff alleges Fowlkes was the Medical Director at GDCP.  *Id.* ¶ 12.  Regardless, as the Defendants note in reply, GCHC is a department within Augusta University, which is a unit of the

---

[7] He also argues the real-party-in-interest exception should be construed narrowly.  Doc. 34 at 6-7.  However, he fails to address the Defendants' arguments regarding substitution under the GTCA.  Likewise, he argues official immunity does not apply (*id.* at 7-10)—but again, official immunity is not the same thing as substitution of the employers under the GTCA.  As noted, Green's response argued that the individuals were independent contractors, but apart from that, he did not address the Defendants' GTCA arguments at all.

Board of Regents of the University System of Georgia. Doc. 36 at 2-3. To be sure that the record was clear on this point, the Court convened a status conference, and Plaintiff's counsel confirmed their agreement that the Provider Defendants were state employees. Consequently, claims arising from their alleged negligence must be brought against the State of Georgia or the agency employing them and cannot, in any event, be brought in federal court. O.C.G.A § 50-21-25. Further, Green does not dispute that they were acting in the scope of their official duties or employment, and the allegations of the complaint make clear that that is precisely what they were doing. Accordingly, the negligence claims against them must be dismissed.

Ordinarily, the Board of Regents and the Georgia Department of Corrections would be substituted for them. O.C.G.A. § 50-21-25. But both entities are entitled to sovereign immunity. The GTCA waives immunity under certain circumstances. However, its narrow waiver of immunity does not include claims brought in federal court. O.C.G.A. § 50-21-23(b). Accordingly, the tort claims in Count II are barred by sovereign immunity.

### III. CONCLUSION

For the reasons noted, Defendants GDC and GCHC's motions to dismiss (Doc. 18) are **GRANTED**, and the claims against them are **DISMISSED** with prejudice. Defendant GDS's motion to dismiss (Doc. 26) is **DENIED**. Defendants Dreaden, Burnside, Fogam, and Fowlkes's motion for partial judgment on the pleadings (Doc. 29) is **GRANTED**, and the state law claims against them are **DISMISSED** with prejudice.

The only remaining claims are against Defendants Dreaden, Burnside, Fogam, and Fowlkes, in their individual capacities, for deliberate indifference to serious medical

needs in violation of the Eighth Amendment (Count I); against Defendant Zimmerman for negligence (Count II); and against Defendant GDS for respondeat superior liability.

**SO ORDERED**, this 9th day of February, 2021.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT