IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

STANLEY GREEN,                          )
                                        )
        Plaintiff,                      )        CIVIL ACTION FILE NO.:
                                        )
v.                                      )        5:20CV00195-MTT
                                        )
YOUNG MI DREADEN, *et al.*              )
                                        )
        Defendants.                     )

**GEORGIA DEPARTMENT OF CORRECTIONS' BRIEF IN SUPPORT OF
MOTION TO QUASH AND FOR PROTECTIVE ORDER**

**I.      The 30(b)(6) topics are not sufficiently particular and are overly broad and unduly
burdensome.**

Under FED. R. CIV. P. 45 (d) (3)(A), a subpoena is required to be quashed if it subjects a

person or an organization to undue burden.  Subpoenas are also subject to the limitations of Rule

26(b)(1).  *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020).  "While

Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally

accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement

of the federal discovery rules." *Id.*  "Thus, a subpoena issued under Rule 45 should be quashed to

the extent it seeks irrelevant information." *Id.*  Finally, FED. R. CIV. P. 45(c) requires that a party

serving a subpoena take reasonable steps to avoid imposing undue burden or expense on the person

or entity subjected to the subpoena.  A non-party may seek protection from a subpoena where it

subjects the non-party to undue burden.  FED. R. CIV. P. 45(c)(3)(A).  Here, for the reasons set

forth below, the subpoena is overly broad and unduly burdensome.

Rule 30(b)(6) allows a party to "name as a deponent . . . a governmental agency, . . . and

must describe with reasonable particularity the matters for examination."  A Rule 30(b)(6)

deposition is not intended to be a substitute for a deposition of a fact witness who has personal

knowledge and information about the facts and circumstances of the case.  Rule 30(b)(6) imposes

upon the discovering party the burden of describing the matters for examination with "reasonable particularity."  FED.R.CIV.P. 30(b)(6); *Great Am. Ins. Co. v. Vegas Constr. Co., Inc*., 251 F.R. D. 534, 539 (D. Nev. 2008).  The noticed governmental agency then has an affirmative duty to provide a witness or witnesses able to provide binding answers on its behalf but this duty extends only to matters reasonably known to the responding party.  FED.R.CIV.P. 30(b)(6); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135 (10th Cir. 2007).  The testimony of the 30(b)(6) witness represents the collective knowledge of the governmental agency, not a specific individual deponent.  Instead, the 30(b)(6) designee testifies as to the governmental agency's position on the listed topics.  *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D. N.C. 1996).

Some courts have defined the "reasonable particularity" burden of Rule 30(b)(6) as a requirement to define the subject matter areas with "painstaking specificity."  *See Sprint Communications v. Theglobe.inc*, 236 F.R.D. 524, 528 (D.Kan. 2006); *EEOC v. Thorman & Wright Corp*., 243 F.R.D. 421, 426 (D.Kan. 2007); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008).  At a minimum, the topic areas should be defined by "relevant time period, geographic scope and related to the claims" at issue in the case.  *See Young v. United Parcel of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764, *24 (D. Md 2010).  The outer limits of the subject matter areas must be sufficiently identified to avoid open-ended, theoretically infinite fields of inquiry.  Moreover, the deposition contemplated by Rule 30(b)(6) is still subject to the general limitations of Rule 26 of the Federal Rules of Civil Procedure such that areas that are duplicative, not relevant, or overly burdensome or oppressive should be limited.  FED.R.CIV.P. 26.

<u>Topic areas identified in Notice of Deposition and GDC's Objections</u>

**1.      Dr. Burnside's medical chart regarding Stanley Green, including the ability to locate this medical chart and discuss it.  Dr. Burnside specifically testified to the existence of this medical chart and described it, and thus an investigation into this matter would start first with Burnside himself. (See Burnside Dep. P. ; [sic].**

GDC objects to this topic to the extent it suggests doctors at GDCP maintain medical records for inmates separate from those kept and maintained by GDC. Medical records, i.e., medical charts, are assigned to inmates *not* doctors. GDC understands reference to a medical chart to be synonymous with medical record. To the extent that Plaintiff is attempting to impose upon GDC's designee the burden of "investigation" into what Dr. Burnside, a non-GDC employee, meant by the term "medical chart," GDC objects.[1] A 30(b)(6) designee is not required to "interview and learn about nuanced factual events in which he was not involved." *Jones v. Hernandez*, 2018 U.S. Dist. LEXIS 10930 (S.D. Cal. Jan. 23, 2018). "When percipient witnesses are available to testify, it is unduly burdensome to expect the entity to interview them and then bind itself to any mistakes made in relaying their testimony secondhand through a 30(b)(6) deponent." *Jones v. Hernandez*, 2018 U.S. Dist. LEXIS 71378 (S.D. Cal. Apr. 27, 2018); *accord Luna v. Cnty. of Riverside*, 2022 U.S. Dist. LEXIS 201601, *10 (C.D. Cal. 2022).

Additionally, the request is vague and unduly burdensome in that it fails to identify with particularity a specific *topic* of discussion regarding Stanley Green's medical records. The State Defendants have produced 269 pages of medical records in their responses to Plaintiff's First Request for Production. Additionally, pursuant to subpoena, Wellstar has produced 769 pages of medical records for Plaintiff. The proposed "topic" fails to state with any particularity the topic within these 1038 pages of medical documents Plaintiff seeks testimony from GDC. *See Cowan v. Raffensperger*, CA No. 1:17CV04660 (N.D. Ga. March 14, 2019) (holding that topics described only as responses to various discovery requests were no sufficiently particularized topics for 30(b)(6) deposition). Similarly, here, the topic of medical records, without more, is not sufficiently particularized to provide GDC's designee "sufficient notice of the subject areas he or she should

---

[1] The topic includes a statement that "an investigation into this matter would start first with Burnside himself."

be prepared to knowledgeably discuss." *Id.* Moreover, where extensive documents have already been provided to Plaintiff through discovery, requiring a Rule 30(b)(6) deponent to testify about the documents is "overly-burdensome." *Jones*, 2018 U.S. Dist. LEXIS 10930, *11 (finding that a Rule 30(b)(6) deposition was "unnecessary, [ ] overly-burdensome, and simply is not appropriate . . . because the documents produced in discovery set forth in black and white" the subject matter of the topic).

Finally, GDC further objects to the extent that the area of inquiry seeks an expert opinion from any GDC representative, and objects to the extent that the area of inquiry seeks information that is otherwise objectionable as duplicative of testimony already provided or to the extent that it purports to seek discovery on matters beyond the scope of the claims in the litigation.

**2. N/A - There is no topic no. 2 separate from 1 above.**

**3.      The frequency that Defendant doctors met to discuss prisoners, including Stanley Green, who were enrolled in the Chronic Illness Clinic Program.  Be prepared to discuss each date that each doctor met with Stanley Green.  Time frame is from March 21, 2018 through June 16, 2018;**

GDC objects to this topic as vague, overly broad and unduly burdensome in that it purports to seek information regarding informal communications between Defendants, all of whom are or were *non* GDC staff.  The request is also overly broad and unduly burdensome in that it appears to seek information regarding Defendants' meetings about offenders *other than* Stanley Green. There is no way for GDC's designee to acquire such knowledge as no policy required defendants to meet and discuss inmates in the Chronic Illness Clinic at any particular date and time.  GDC is unaware of any documentation of any such meetings.  As noted in no. 1 above, GDC's designee is not required to investigate Plaintiff's case for him.  *See Jones*, 2018 U.S. Dist. LEXIS 71378; *accord Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

Finally, with respect to Plaintiff's request for a designee to discuss "each date that each doctor met with Stanley Green" between March 21, 2018 and June 16, 2018, GDC will provide a designee to provide the dates reflected in Plaintiff's medical records for this time period. Knowledge of any meeting between Plaintiff and his doctors that were *not* documented in Plaintiff's medical records are beyond the scope of knowledge of GDC. GDC objects to the request to the extent Plaintiff is attempting to compel GDC to obtain any information from sources other than GDC documents. *See Jones*, 2018 U.S. Dist. LEXIS 71378; *accord Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

**4.    The date that Stanley Green was enrolled in the Chronic Illness Clinic Program at Georgia Diagnostic and Classification Prison during his imprisonment between March 2018 and June 30, 2018;**

GDC has no objection to this topic.

**5.    All dates that Stanley Green visited a vascular surgeon, including the location of the visit and the doctor's name;**

GDC objects to this topic as overly broad and unduly burdensome. Plaintiff is already in possession of all of Plaintiff's medical records. The request is not limited to a particular time frame. The specific information requested is not always documented in GDC records. Notwithstanding the objection, the GDC designee will be prepared to testify as to what documentation exists in GDC records reflecting Plaintiff's consults with a vascular surgeon between the dates of March 27, 2018 and June 30, 2018. The designee cannot testify as to whether any consults took place which are not noted in the records. GDC requests that the Court limit this topic.

**6.    All documents, including the appointment calendar for Dr. Hale Burnside, which demonstrate that Stanley Green had an appointment with Dr. Hale Burnside, and the reason for the appointment. The time frame is from June 5, 2018 through June 7, 2018;**

5

GDC objects to this topic as vague, overly broad and unduly burdensome.  As noted above, GDC was not Dr. Burnside's employer and has no access to any calendar Dr. Burnside may have maintained.  The daily sick call calendar does not reflect which clinician saw a particular patient.  GDC objects to the topic as overly broad as it seeks to be exhaustive, seeking information about "[a]ll documents."  Finally, the "topic" is not sufficiently particularized because it fails to describe what information from "all documents" the designee must be prepared to testify about.  Subject to and without waiving said objection, the GDC designee will be prepared to testify as to whether Plaintiff's name appears on the sick call request log from June 5, 2018, to June 7, 2018, and testify regarding any additional information about the request for sick call that may be recorded on the log.  The designee will have no additional information.  GDC requests that the Court limit this topic.

**7.      The number of diabetics who were sent to an emergency room from GDCP, for any reason, and the exact reasons documented for sending said diabetic to the emergency room[.] The time period of this is from January 1, 2015 through December 31, 2018.  The topic is limited to Diabetics who were (1) housed at GDCP and (2) were enrolled in the Chronic Illness Care Program;**

GDC objects to this topic as overly broad, unduly burdensome and not relevant to Plaintiff's claims.  First, Plaintiff is seeking testimony regarding offenders *other than* Plaintiff.  Such testimony is not relevant to any of the claims and defenses in this case, and therefore it is beyond the scope of discovery.  Second, Plaintiff is seeking information for a four-year period starting more than three years before Plaintiff was even incarcerated.  Third, the information sought is not maintained in a manner that is easily extracted from GDC documents and systems.  GDC does not maintain a list of "diabetics who were sent to an emergency room from GDCP."  Since GDCP is an intake facility, the information Plaintiff seeks about all diabetic inmates in the Chronic

Illness Care Program during a four-year period, would likely include thousands of inmates.[2]  In order to obtain the information Plaintiff seeks, the designee would first have to review all *daily* executive reports of all outside medical appointments for a four-year period.  The designee would then have to go through each inmate's medical file to determine if they were a diabetic in the Chronic Illness Care Program, and if so, search for the "exact reasons documented for sending said diabetic to the emergency room."  Additionally, all outside ER runs may not be captured/reported on the executive reports.

Finally, the discovery sought is not needed by Plaintiff and it is burdensome to GDC. Finally, to the extent Plaintiff seeks any information beyond the numbers requested, the topic is also not sufficiently particularized to provide the designee notice of what they must be prepared to testify about.  *See* Fed. R. Civ. Proc. 26(b)(1); *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

**8.      The number of inmates who suffered amputations while being housed at GDCP.  The time period of this is from January 1, 2015 through December 31, 2018;**

Same objection as no. 7 above.  GDC does not maintain a list of inmates that have had amputations while housed at GDCP.  The only way a designee could ascertain this information would be to first obtain claims data from both a current and a former vendor that paid hospital claims during the requested time period, a process that would be costly for GDC and require significant time to obtain.

**9.      The number of times an Erythrocyte Sedimentation Rate test (ESR) was ordered and received by an inmate, prior to that inmate suffering from an amputation while being housed at GDCP.  To be clear, we want to know (1) all inmates who suffered from an amputation while being used [sic] at GDCP, and (2) whether an ESR was ordered ever prior to said amputation.  The time period of this is from January 1, 2015 through December 31, 2018, including the redacted documentation which demonstrates this;**

---

[2] Statewide, roughly 31% of the inmate population participates in the Chronic Illness Clinic Program (CIC). Currently, 26.8% of inmates at GDCP participate in the CIC.  The program includes care for offenders with 8 mandatory chronic illnesses as well as some miscellaneous conditions, such as cystic fibrosis, that also qualify for the program.  The 8 illnesses include, hypertension, cardiovascular disease, hepatitis C, HIV, latent TB, hyperlipidemia, diabetes, COPD/asthmas, seizures, gastro esophageal reflux disease, thyroid, and anti-coagulation disease.

Same objection as no. 7 above.  GDC does not maintain a list of inmates that have had amputations while housed at GDCP.  The only way a designee could begin to ascertain this information would be to first obtain claims data from both a current and a former vendor that paid hospital claims during the requested time period, a process that would be costly for GDC and require significant time to obtain. The designee would then be required to have a third vendor provide a list of all Erythrocyte Sedimentation Rate (ESR) tests to compare with the list of amputees, the designee would then have to review the medical records of each of those inmates to confirm that an amputation was done and that at some undefined time period prior to the amputation, that inmate received an ESR test.

**10.     The number of times a C-Reactive Protein Test (CRP) was ordered and received by an inmate, prior to that inmate suffering from an amputation while being housed at GDCP. To be clear, we want to know (1) all inmates who suffered from an amputation while being used at GDCP, and (2) whether a CRP was ordered ever prior to said amputation.  The time period of this is from January 1, 2015 through December 31, 2018, including the redacted documentation which demonstrates this;**

Same objection as no. 7 above.  GDC does not maintain a list of inmates that have had amputations while housed at GDCP.  The only way a designee could begin to ascertain this information would be to first obtain claims data from both a current and a former vendor that paid hospital claims during the requested time period, a process that would be costly for GDC and require significant time to obtain.  The designee would then be required to have a third vendor provide a list of all C-Reactive Protein (CRP) test to compare with the list of amputees, the designee would then have to review the medical records of each of those inmates to confirm that an amputation was done and that at some undefined time period prior to the amputation, that inmate received a CRP test.

**11.     The number of times intravenous antibiotics was ordered and received by an inmate, prior to that inmate suffering from an amputation while being housed at GDCP.  To be clear, we want to know (1) all inmates who suffered from an amputation while being used at GDCP,**

8

**and (2) whether intravenous antibiotics were ordered and received ever prior to said amputation. The time period of this is from January 1, 2013 through December 31, 2018, including the redacted documentation which demonstrates this;**

Same objection as no. 7 above. GDC does not maintain a list of inmates that have had amputations while housed at GDCP, nor a list of all inmates that have received intravenous antibiotics. The only way a designee could begin to ascertain this information would be to first obtain claims data from both a current and a former vendor that paid hospital claims during the requested time period, a process that would be costly for GDC and require significant time to obtain. The designee would then have to go through each individual inmate's medical record to determine whether there are any notes regarding intravenous antibiotics. These GDC records would not include intravenous antibiotics provided by an outside medical facility, such as a hospital where amputations are conducted.

**12.   All local orders regarding diabetic patient care for inmates such as Stanley Green who also were participating in the Chronic Illness Program. We will discuss the title, effective, date, and substance of each local order with respect to discretionary and non-discretionary duties within each local order. The time period is between March 1, 2018 and June 21, 2018.**

GDC objects to this topic as vague as the term "local order" is not defined and it is not a term used within GDC.[3] The term "local order" may refer to Local Operating Procedures, i.e., an operating procedure for a specific GDC Standard Operating Procedure that is applicable only to a specific prison. No Local Operating Procedure regarding diabetic patient care was in place during the requested time period. The term "local order" may also refer to an individual clinician's standing order relating to nursing protocols. GDC has no way of determining what any individual clinician's standing orders were in 2018. A 30(b)(6) designee is not required to "interview and

---

[3] The Chronic Illness Program used a standard form, the Chronic Illness Form, at all GDC facilities.

learn about nuanced factual events in which he was not involved." *Jones*, 2018 U.S. Dist. LEXIS

10930.

**13.    All local orders pertaining to emergency medical treatment of inmates at GDCP, which were in effect between March 1, 2018 and June 21, 2018 – including local orders which supplemented GDC SOP VH30-0004 (507.04.28):  Chronic Care Procedures and Protocols; GDCP SOP VH03-0005: Patient Tracking Systems; GDC SOP VH30-0006: Direct Orders; GDC SOP VH30-0008: Transcription of Medical Orders; GDC SOP 507.02.01: Health Record Management, Format and Contents; GDC SOP 507.02.03; Transfer and Retention of Health Records; GDC SOP VH31-0001:  Urgent/Emergent Care Services; GDC SOP VH31-0005:  Evaluation Services for Urgent or Emergent Health Care Requests.  We will discuss whether these local rules exist and if they do, we will discuss the discretionary and non discretionary duties found in each local order, along with discussing effective dates of each local order.**

Same objection as no. 12 above.

**14.    All written reprimands each Defendant received during their employment with GDCP, including the date and reason and the outcome.  Time frame is January 1, 2013 through December 31, 2018.**

GDC objects to this topic as Defendants were not employees of GDC or GDCP during

January 1, 2013, to December 2018.  Any documents pertaining to any written reprimands would

be maintained by Defendants' employer or former employer, Augusta State University,[4] the

medical contractor for GDC facilities prior to August 31, 2022.  Rule 30(b)(6) does not require

GDC to designate a deponent to provide testimony about another agency's documents and

employees. *See Willy v. Sherwin-Williams Co.*, 2022 U.S. Dist. LEXIS 88454 (D. Oregon 2022)

(explaining that a party may not transfer their "own discovery obligations to a corporate

designee.").

**15.    All adverse actions taken or proposed or against each Defendant, including the date and reason and outcome.  Time frame is January 1, 2013 through December 31, 2018;**

Same objection as no. 14 above.

**16.    Confirm that each Defendant signed an acknowledgement form regarding each of the following:    the GDC Employee Standards of Conduct; GDC SOP VH31-0001:**

---

[4] Georgia Correctional Health Care is a division of August State University.

**Urgent/Emergent Care Services; GDC SOP VH31-0005:  Evaluation Services for Urgent or Emergent Health Care Requests; Chronic Care Procedures and Protocols; GDC SOP VH03-0005;**

Same objection as no. 14 above.

**17. All positive drug test results for each Defendant;**

Same objection as no. 14 above.

**18. All performance reviews for every Defendant;**

Same objection as no. 14 above.

**19.    Discuss the relationship between Georgia Medical College and the Georgia Department of Corrections, including whether GDOC standard operating procedures apply to employees of Georgia Medical College; who pays the Defendants; who has the ability to terminate the Defendants employment; do these Defendants have a contract with the GDOC; the contractual relationship between the GDOC and GMC, in terms of who carries the obligation to ensure proper medical care and who is liable for money damages awards;**

GDC objects to this topic as vague, overly broad and unduly burdensome and as improper in that it seeks a legal conclusion.  The term "relationship" is not sufficiently defined to provide the designee with sufficiently particularized notice of what the designee must be prepared to testify about at the deposition.  Additionally, because Standard Operating Procedures govern "processes" and not "employees" it is unclear what Plaintiff means by seeking information on whether the SOP's apply to employees of the Medical College of Georgia.[5]

The request is also overly broad and unduly burdensome in several respects.  First, the request is not limited to a particular time frame.  Second, Plaintiff has already received discovery documents pertaining to each Defendant's employment from their employer, i.e., Augusta University.[6]  *See* Documents in Response to Subpoena to University System of Georgia, Board of Regents (BOR).  Plaintiff is well aware that none of Defendants are GDC employees.  *See*

---

[5] Plaintiff's topic description repeatedly refers to Georgia Medical College.  The correct name for the college is Medical College of Georgia.

[6] The Medical College of Georgia is a part of Augusta University.

Complaint ¶¶ 3, 4, 5, 10, 12.  The topic of "who pays the Defendants" and "who has the ability to terminate the Defendants" is likely answered through the document production already received from BOR, or to additional discovery directed at Defendants or their employer, not GDC.  *See Willy*, 2022 U.S. Dist. LEXIS 88454 (D. Oregon 2022) (explaining that a party may not transfer their "own discovery obligations to a corporate designee.").

Finally, the topic of the contractual relationship between GDC and the Medical College of Georgia, specifically regarding the legal obligation to provide proper medical care and liability for money damages are legal questions outside the scope of permissible discovery.

Notwithstanding the objection, GDC will produce a designee to discuss the existence of an interagency government agreement, in effect in 2018, between GDC and Medical College of Georgia and their subsidiary, Georgia Correctional Health Care, for the delivery of health care to inmates within GDC facilities.  The GDC designee will *not* interpret or elaborate on the legal relationship between the agencies in the written document.  The designee will confirm that none of the Defendants were GDC employees, and none of the individuals had any contractual relationship directly with GDC.  Any contractual relationship between Defendants and the Medical College of Georgia should be directed to Augusta State University, through the Board of Regents for the University System of Georgia.  GDC asks that the Court limit this topic accordingly.

**20.   All medical charts of Defendant Fogam, Burnside, Dreaden and Fowlkes regarding Stanley Green;**

GDC adopts and incorporates by reference its objection to request no. 1 above.

**21.   All physician orders for X-rays regarding Stanley Green.  Time period March 1, 2018, through June 20, 2018;**

GDC does not object to providing a designee to identify all physician orders for X-rays regarding Stanley Green during the period of March 27, 2018, through June 20, 2018.  However, to the extent Plaintiff is seeking testimony beyond simply identifying these physician orders, GDC

objects to the topic as not sufficiently particularized to provide the designee with notice of what they must be prepared to testify about at the deposition.

Finally, GDC further objects to the extent that the area of inquiry seeks an expert opinion from any GDC representative, and objects to the extent that the area of inquiry seeks information that is otherwise objectionable as duplicative of testimony already provided. GDC asks that the Court limit this topic to the identification of the physician orders for x-rays.

**22. Discuss the content and meaning of all policies that govern medical staff's requirement to physically visit inmates in relation to Stanley Green. Be prepared to discuss how often medical staff visited Stanley Green for physical health purposes and point to all documentation. The time period of this is from March 1, 2018 through December 31, 2018;**

GDC objects to this topic as vague, overly broad and unduly burdensome. Roughly 70% of GDC SOP's related to health care may speak to an encounter with an offender. The topic, as written, fails to provide the designee with notice of the subject of the request with sufficient particularity. *See Cowan v. Raffensperger*, CA No. 1:17CV04660 (N.D. Ga. March 14, 2019) (holding that topics described only as responses to various discovery requests were no sufficiently particularized topics for 30(b)(6) deposition). Similarly, here, the topic is not sufficiently particularized to provide GDC's designee "sufficient notice of the subject areas he or she should be prepared to knowledgeably discuss." *Id*.

Additionally, the request to discuss medical staff's visits with Plaintiff is unduly burdensome because Plaintiff is already in possession of all of Plaintiff's medical records where such visits would be documented. To the extent Plaintiff seeks information regarding any informal visit between Plaintiff and any medical staff, i.e., an encounter between medical staff and Plaintiff that was not recorded in Plaintiff's medical records, the designee would have no way of obtaining the information sought.

Finally, GDC further objects to the extent that the area of inquiry seeks an expert opinion from any GDC representative, and objects to the extent that the area of inquiry seeks information that is otherwise objectionable as duplicative of testimony already provided through other deponents.

**23.    All policies and procedures that required the defendants to review Stanley Green's medical record as a participant in the CIC program, including the dates that his medical record(s) were reviewed and by whom;**

GDC objects to this topic as vague, overly broad and unduly burdensome. The topic, as written, fails to provide the designee with notice of the subject of the request with sufficient particularity. For instance, the topic fails to describe what the deponent is asked to know about "all policies and procedures." It is unclear if this is a request to simply identify "all policies and procedures," or be prepared to discuss their content and any particular provisions within said policies and procedures. As stated above, roughly 70% of GDC SOP's related to health care may speak to an encounter with an offender. The topic, as written, fails to provide the designee with notice of the subject of the request with particularity. *See Cowan v. Raffensperger*, CA No. 1:17CV04660 (N.D. Ga. March 14, 2019) (holding that topics described only as responses to various discovery requests were no sufficiently particularized topics for 30(b)(6) deposition).

Additionally, the request to GDC, a non-party to this litigation, is unduly burdensome because Plaintiff is already in possession of all of Plaintiff's medical records where any visits between Plaintiff and medical staff would be documented. The designee can only speak to what is documented in Plaintiff's medical records. There is no way for a GDC designee to acquire knowledge of every time Plaintiff's medical record was reviewed by one of the Defendants *unless it is documented in his records.* A 30(b)(6) designee is not required to "interview and learn about nuanced factual events in which he was not involved." *Jones*, 2018 U.S. Dist. LEXIS 10930. "When percipient witnesses are available to testify, it is unduly burdensome to expect the entity to

14

interview them and then bind itself to any mistakes made in relaying their testimony secondhand through a 30(b)(6) deponent." *Jones*, 2018 U.S. Dist. LEXIS 71378; *accord Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

**24.     Identify every offsite medical-professional visit undertaken by Stanley Green during his time of being housed at GDCP and be able to state the dates in which he went off site to visit a physical health professional, including all visits to off-site facilities for his foot.  The time period of this is from March 1, 2018 through December 31, 2018;**

GDC objects to this topic as overly broad and unduly burdensome.  The request to GDC, a non-party to this litigation, is unduly burdensome because Plaintiff is already in possession of all of Plaintiff's medical records where any outside consults are typically recorded.  The designee can only speak to what is documented in Plaintiff's medical records and GDC's SCRIBE records, including movement history and consult requests. All records are available to Plaintiff through discovery.  There is no way for a GDC designee to acquire knowledge of any offsite medical visits that were not recorded.  A 30(b)(6) designee is not required to "interview and learn about nuanced factual events in which he was not involved."  *Jones*, 2018 U.S. Dist. LEXIS 10930.  "When percipient witnesses are available to testify, it is unduly burdensome to expect the entity to interview them and then bind itself to any mistakes made in relaying their testimony secondhand through a 30(b)(6) deponent." *Jones*, 2018 U.S. Dist. LEXIS 71378; *accord Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

GDC further objects to the extent that the area of inquiry seeks an expert opinion from any GDC representative.[7]  GDC objects to the extent that the area of inquiry seeks information that is otherwise objectionable as duplicative of testimony already provided or to the extent that it purports to seek discovery on matters beyond the scope of the claims in the litigation.

---

[7] GDC acknowledges that the dates of consultations are not expert testimony and makes this objection only to the extent that Plaintiff seeks expert opinions regarding any of those consults.

Subject to and notwithstanding the above objections, GDC will provide a designee to provide testimony regarding the date of any offsite consult visits for Plaintiff during March 27, 2018, through December 31, 2018, that are recorded as a consult in Plaintiff's medical record or in Plaintiff's movement history. GDC asks that the Court limit this topic to testimony regarding the date of any offsite consult visits for Plaintiff during March 27, 2018, through December 31, 2018.

**25.    All emails between jail staff and medical staff regarding Stanley Green's medical history and treatment, including the date, time, and content of those communications. Be prepared to offer binding testimony on the manner in which these communications were documented and the location of these communications. The time period of this is from March 1, 2018, through December 31, 2018;**

GDC objects to this topic as vague, overly broad and unduly burdensome. This topic seeks testimony regarding emails from unidentified individuals described only as "jail staff," and "medical staff." GDC interprets "jail staff" to mean staff at *county* jail facilities not run by GDC, and the term "medical staff" includes exclusively staff *not* employed by GDC.[8] Plaintiff may not transfer his "own discovery obligations to a corporate designee." *See Willy*, 2022 U.S. Dist. LEXIS 88454 (D. Oregon 2022). "When percipient witnesses are available to testify, it is unduly burdensome to expect the entity to interview them and then bind itself to any mistakes made in relaying their testimony secondhand through a 30(b)(6) deponent." *Jones*, 2018 U.S. Dist. LEXIS 71378; *accord Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

**26.    The full name of the unit manager, including unit manager "Denny" (see paragraph 83 of enclosed complaint) who was on duty June 5-7, 2018, and was charged with managing the housing unit of Mr. Green on those dates;**

The name of the unit manager for the J dorm, where Plaintiff was housed on June 5-7, 2018, is Brenda Dendy. To the extent that Plaintiff seeks any additional information, including

---

[8] As noted above, treating physicians and nurses are employed by the Medical College of Georgia, a part of Augusta University.

16

information regarding Plaintiff's allegations in paragraph 83 of the complaint, GDC objects. *See Willy*, 2022 U.S. Dist. LEXIS 88454 (D. Oregon 2022); *Jones*, 2018 U.S. Dist. LEXIS 71378; *Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

**27.    The complete movement history and reason for move regarding Mr. Green, including his movement history and reason for move from June 5-7, 2018.  Be able to point to all documents that show this movement history and reason thereof;**

GDC objects to this topic as overly broad and unduly burdensome to the extent Plaintiff is seeking information not documented in GDC records.  For instance, the reason a move was made is not always available in any notation regarding movement.  Additionally, not all movement to and from a medical unit within GDC facilities is necessarily recorded.  The designee will not be prepared to testify about any movement that was not recorded in GDC documents, and the designee's testimony will be limited to the information captured in GDC records.   To the extent that Plaintiff seeks any additional information GDC objects. *See Willy*, 2022 U.S. Dist. LEXIS 88454; *Jones*, 2018 U.S. Dist. LEXIS 71378; *Luna*, 2022 U.S. Dist. LEXIS 201601, *10.  GDC moves for an order limiting this topic.

**28.    Discuss the criteria that must be met prior to referring Stanley Green for a subspecialty consultation, diagnostic test, or therapeutic intervention.  The time period is March 1, 2018 through June 20, 2018;**

GDC objects to this topic as vague, overly broad and unduly burdensome in that "criteria" is not defined and may take on multiple meanings.  Further, GDC objects to this question to the extent that the area of inquiry seeks an expert opinion from any GDC representative, and objects to the extent that the area of inquiry seeks information that is otherwise objectionable as duplicative of testimony already provided or to the extent that it purports to seek discovery on matters beyond the scope of the claims in the litigation. *See* Deposition of Dr. Burnside at 105:9 through 106:5 (testimony of Dr. Burnside that he had the authority to request diagnostic tests and therapeutics).  Referrals for testing and therapeutic care are based upon a clinician's judgment and not any set

17

medical criteria.  Notwithstanding the objection, the designee may speak to the process of referral.

GDC requests that the court issue an order so limiting this topic.

**29.     The name and rank (e.g., unit manager) of the person who ordered Mr. Green to the medical unit, and the reason that said person ordered Mr. Green to the medical unit.  The time period for this is between June 5, 2018 and June 7, 2018.  Be able to identify all documents that support the answer to this question including movement logs.**

GDC objects to this topic as overly broad and unduly burdensome.  GDC has already

identified the unit manager over Plaintiff's dorm in June 2018.  *See* no. 26 above.  To the extent

any records exist to support that unit manager Dendy ordered Plaintiff to the medical unit, those

documents will speak for themselves.  To the extent that Plaintiff seeks to impose upon GDC an

obligation to interview witnesses and relay that testimony as a 30(b)(6) designee, GDC objects.

*See Willy*, 2022 U.S. Dist. LEXIS 88454; *Jones*, 2018 U.S. Dist. LEXIS 71378; *Luna*, 2022 U.S.

Dist. LEXIS 201601, *10.

**30.     Discuss the means of communicating the Radiology Report that was electronically reviewed by Dr. James Zimmerman on 6/12/2018 to the requesting facility, including GDOC and Georgia Diagnostic Prison; including all persons to whom the report was sent to, when the report was sent, who read and reviewed the report, and the date and time the report was read, including but not limited to Defendants Fogam, Fowlkes and Burnside.**

GDC objects to this topic as vague, overly broad and unduly burdensome.  The topic is

burdensome in numerous respects.  First, it is unclear what communication Plaintiff is referring.

Second, it is unclear what Radiology Report is at issue since it is only described by the date of

review by a *non-GDC* doctor.

Assuming the referenced Radiology Report is the same report attached as Exhibit 2 to yet

another document subpoena to GDC, the report was from Global Diagnostic Services, Inc. dated

June 11, 2018.  A paper copy of this report is maintained in Plaintiff's medical records.  Plaintiff

has been provided his entire medical record.  GDC has no way of knowing 1) what persons or

entities Global Diagnostic Services, Inc. "communicated" the report to; 2) when Global

Diagnostic Services, Inc., "communicated" the report; and 3) who read and/or reviewed the report *unless* that review is documented in the medical records Plaintiff already has in his possession.  A request that the GDC representative provide testimony regarding when and how a private company relayed a report to non-GDC doctors, i.e., Doctors Fogam, Fowlkes, and Burnside, is overly broad and unduly burdensome.

GDC objects to Plaintiff's attempt to impose upon GDC an obligation to interview witnesses and relay that testimony as a 30(b)(6) designee, GDC objects.  *See Willy*, 2022 U.S. Dist. LEXIS 88454; *Jones*, 2018 U.S. Dist. LEXIS 71378; *Luna*, 2022 U.S. Dist. LEXIS 201601, *10.

## II.      The requests for documents are overly broad and unduly burdensome.

GDC does not have responsive documents for Plaintiff's first three requests.  To the extent Plaintiff seeks to impose upon GDC an obligation to secure documents of another agency, i.e., Defendants' employer(s), GDC objects and seeks a protective order from this court.

GDC asks that the Court quash the fourth, fifth, and sixth request[9] as they are overly broad and unduly burdensome.  The 2002 Clinical Update 2.05 was a repository on a GDC dashboard which is no longer in existence.  Upon information and belief, the 2002 Clinical Update 02.05 was not in use in 2018, during Plaintiff's incarceration.  No current GDC staff have knowledge about the GDC Clinical Update 02.05.  *See* Fed. R. Civ. Proc. 26(b)(1); *Porter*, 461 F.3d at 1324.

As to the fifth request, Plaintiff fails to define what is meant by "direct orders policies and procedures" and "treatment orders."   It is unclear what orders Plaintiff is referencing.  Additionally, GDC objects to the extent Plaintiff is seeking information regarding an individual

---

[9] The requests are:  GDC Clinical Update 02.05:  Cost Effective Laboratory and Clinical Practices – September 6, 2002; All Direct Orders policies and procedures, regarding treatment orders, including those originating from the Health Services Division, that were in effect from March 1, 2018 through June 28, 2018; and all policies and procedures regarding referrals outside of healthcare services that were in effect from March 1, 2018 through June 28, 2018.

clinician's standing orders or policies and procedures of Georgia Correctional Health Care or the Medical College of Georgia. *See* Fed. R. Civ. Proc. 26(b)(1); *Porter*, 461 F.3d at 1324. As to the sixth request, as written, this request includes all security policies and procedures; all mental health policies and procedures; all dental policies and procedures; all diagnostic policies and procedures; all grievance policies and procedures; all employment policies and procedures, etc. These policies are not relevant to Plaintiff's claims. *See* Fed. R. Civ. Proc. 26(b)(1); *Porter*, 461 F.3d at 1324.

GDC asks the Court to quash the seventh and eighth requests[10] as unduly burdensome since Plaintiff has all of his medical records and at least one defendant has testified that there were no meetings. GDC should not be required to search through the medical records to determine whether any meetings were noted within those records. GDC has no other responsive documents.

GDC asks the Court to quash the ninth request[11] as it is overly broad and unduly burdensome. As noted in GDC's objection to topic nos. 12 and13 above, there are no local operations procedures. To the extent Plaintiff is referring to a clinician's standing order, GDC would have no way of knowing what standing orders were in place during the requested time period.

**CONCLUSION**

For all of the foregoing reasons, GDC respectfully requests that this Court quash the subpoena attached hereto as Exhibit 5 and issue a protective order.

Respectfully submitted,

---

[10] The requests are for: All documents which demonstrate the dates upon which meetings were scheduled between Dr. Fowlkes and/or Dr. Fogam and Dr. Burnside and all documents which demonstrate the discussion that occurred in those meeting[s], such a[s] meeting minutes. The time frame is March 1, 2018 and June 20, 2018; All sick calls made by Green from March 1, 2018 through June 20, 2018.

[11] The request is for: All local orders, policies, procedures, and protocols regarding Urgent/Emergent Care Services; GDC SOP VH31-0005: Evaluation Services for Urgent or Emergent Health Care Requests; Chronic Care Procedures and Protocols; GDC SOP VH03-0005 that were in effect during the time period of March 1, 2018 through June 20, 2018.

CHRISTOPHER M. CARR                112505
Attorney General

BETH BURTON                        027500
Deputy Attorney General

TINA M. PIPER                      142469
Sr. Assistant Attorney General

ELIZABETH M. CROWDER               100809
Sr. Assistant Attorney General

/s/Cristina M. Correia
CRISTINA M. CORREIA                188620
Sr. Assistant Attorney General


Please send all correspondence to:
CRISTINA M. CORREIA
Senior Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Direct line: (404) 458-3535
Email: ccorreia@law.ga.gov

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served counsel of record by electronic transmission addressed to the following:

Mario Williams                  mwilliams@ndh-law.com

                                       mwilliams@hdrattorneys.com

                                       mario@goodgeorgialawyer.com

Heather H. Miller               hmiller@mmbblaw.com

Trisha Godsey          tgodsey@mmbblaw.com

Rodney Atreopersaud ratreopersaud@law.ga.gov


This 16th day of December 2022.


                          /s/ Cristina M. Correia
                          Senior Assistant Attorney General