**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **STANLEY GREEN** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil Action No.:** |
| | ) | **5:20CV00195-MTT** |
| | ) | |
| **YOUNG MI DREADEN, et al.** | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
GEORGIA DEPARTMENT OF CORRECTIONS' BRIEF IN SUPPORT
OF MOTION TO QUASH AND FOR PROTECTIVE ORDER**

Mr. Green files this Response to Defendants; Motion to quash and for Protective Order, showing the Court the following:

**LEGAL STANDARD**

Federal Rules of Civil Procedure 26(b)(1) governs the scope of discovery and the relevancy of discovery being sought. *See* USCS Fed Rules Civ Proc R 26. In fact, in September 2022, the Eleventh Circuit Court of Appeals opined on the scope of discovery in terms of relevant information. Taylor v. Farm Credit Fla. Aca, No. 21-13807, 2022 U.S. App. LEXIS 27172, at *9 (11th Cir. Sep. 28, 2022). Specifically, the Taylor court stated that "**[r]elevance** for **discovery** has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Akridge v. Alfa Mut. Ins. Co., 1 F.4th 1271, 1276 (11th Cir. 2021) (quotation marks omitted). Indeed, discovery being sought must be proportional to the needs of the case; in this respect, "[p]roportionality concerns include the importance of the requested discovery, the parties' relative access to the information, and "whether the burden or expense of the proposed discovery outweighs its likely benefit."" Fed. R. Civ. P. 26(b)(1); Taylor 2022 U.S. App. LEXIS at *9.

Significantly, the Taylor court addressed head-on situations in which a party must show a "particularized" need for discovery, reasoning that this showing only occurs when a party is

"seeking much broader **discovery** than the **natural focus** of the inquiry"; in this situation, and only this situation, a party "generally must show "particularized need and likely **relevance**" of discovery being sought. <u>Taylor</u> 2022 U.S. App. LEXIS at *9 (emphasis added).

Driving home the point regarding the broad nature of discovery with respect to relevance, just three months after <u>Taylor</u>, the Eleventh Circuit (November 23, 2022) reasoned that the "Federal Rules strongly favor full discovery whenever possible," and that "A civil litigant is generally entitled to 'any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence.'" *See* <u>Marbury v. Warden III</u>, No. 22-10916, 2022 U.S. App. LEXIS 32341, at *4-5 (11th Cir. Nov. 23, 2022).

That established, and within the above context, this Court has interpreted the scope of discovery—including the scope of relevant information being sought by a party—to mean that a party seeking disputed discovery must show that the evidence being sought is:

1) relevant to any party's claim or defense;

2) proportional to the needs of the case;

3) important with respect to resolving the issues in the case; and

4) more beneficial than burdensome.

(*See* <u>Shelley v. Wesleyan Coll.</u>, No. 5:18-CV-380 (MTT), 2020 U.S. Dist. LEXIS 140116, at *3-4 [M.D. Ga. Aug. 5, 2020]). In this case, Plaintiff meets all relevant legal factors, but importantly, in the majority of instance, **Defendants fail** to meet their **initial burden as the movant** and thus Defendants' Motion should be denied, *in toto*.

Now that Mr. Green has addressed the legal standard regarding scope of discovery and relevancy, as the nonmovant in the Motion before the Court, he now turns the Court's attention to the matter of burden. With respect to claiming Mr. Green's request are unduly burdensome and overly broad, Defendants must show good cause, "to establish their entitlement to a protective order under Rule 26." Foremost, the showing of good cause is a particularized showing. <u>Sanders</u>, 378 F. Supp. 3d at 1183. In fact, to meet the burden of making a particularized showing of good cause, the Defendants must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"; said differently, "the onus is on the party resisting discovery to demonstrate specifically how the request is unreasonable or otherwise overly burdensome." Indeed, when objecting on grounds of overbreadth and unduly burdensome, the **moving party** "**must show** specifically how each question is overly broad, burdensome or

oppressive by **submitting affidavits or** offering **evidence** revealing the nature of the burden." Amendia, Inc. v. Omni Surgical, LLC, No. 1:12-CV-1168-CC, 2012 U.S. Dist. LEXIS 205429, at *6 (N.D. Ga. June 8, 2012) (emphasis added).

Additionally, to meet this substantial burden of showing good cause with particularity, Defendants cannot meet said burden "by asserting broad allegations of harm [that are] unsubstantiated by specific examples." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986). Moreover, "good cause" with particularity is not "established merely by showing that discovery involves inconvenience and expense. Moore's Federal Practice § 26. 104[1]."

## RESPONSE, ARGUMENT AND CITATION TO AUTHORITIES

1. Dr. Burnside's medical chart regarding Stanley Green, including the ability to locate this medical chart and discuss it. Dr. Burnside specifically testified to the existence of this medical chart and described it, and thus an investigation into this matter would start first with Burnside himself. (*See* Burnside Dep. P. ; [sic].

**RESPONSE:** Defendants' objection is unsupported by the law. Foremost, Defendant **is confused** about who holds which burden, neglecting the fact that the Defendants' burden when objecting on grounds of overbreadth and unduly burdensome is onerous—and **the first burden that must be met.** *See* Sanders v. Quiktrip Corp., 378 F. Supp. 3d 1177, 1183 (N.D. Ga. 2019); Amendia, Inc., 2012 U.S. Dist. LEXIS at *6; Cipollone,785 F.2d at 1121.

In this case, the Defendants' have not met their onerous burden because their objection stating that the topic is "vague and unduly burdensome," and "overly-burdensome," is insufficient as a matter of law because these statements have been rejected by courts as being unlawfully "[b]road allegations of harm [that are] unsubstantiated by specific examples." Cipollone,785 F.2d at 1121. To the contrary, Defendants must show good cause—with particularity—when objecting on grounds of overbreadth and unduly burdensome, "by **submitting affidavits or offering evidence revealing the nature of the burden**." These Defendants have failed to provide this Court with any 'affidavit' or other actual 'evidence' supporting conclusory statements—made by Defendants' counsel—such as "Medical records, i.e., medical charts, are assigned to inmates *not* doctors. GDC understands reference to a medical chart to be synonymous with medical record." (*See* ECF 82-1, Defs' Br. pp. 2-4); (see also Amendia, Inc., 2012 U.S. Dist. LEXIS at *6; Cf. *Carroll v. ATA Retail Servs.*, No. 1:14-CV-00747-ELR, 2017 U.S. Dist. LEXIS 227092, at *35 (N.D. Ga. July 25, 2017), reasoning that "statements, objections, or arguments made by the lawyers

[were] not evidence in the case.) Defendants' failure to even support broad assertions with any evidence save their counsel's bald and evidentiary-lacking statements is reason alone to reject this objection. Id. But there is more reason to overrule Defendants' objection.

To support their objection, Defendants entirely distort a case by taking its facts out of context, a reality the contravenes the Eleventh Circuit Court of Appeals' repeated warning that "[w]hatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced," and "[t]he holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." See Watts v. BellSouth Telecommunications, Inc., 316 F.3d 1203, 1207 (11th Cir. 2003); see also United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000).

In this case, Defendants use a single sentence, taken out of context to make an argument that Mr. Green's request is unduly burdensome. To wit: "A 30(b)(6) designee is not required to "interview and learn about nuanced factual events in which he was not involved." Jones v. Hernandez, 2018 U.S. Dist. LEXIS 10930 (S.D. Cal. Jan. 23, 2018); (ECF 82-1, Defs' Br. p. 2-4) However, upon closer and full review of the district court's ruling in the **California** case, it is clear Defendants' usage was completely out of context, because the Court actually stated that the subject topic required the corporate deponent to confer with an **endless number of witnesses in detail** and testify to their personal experiences of which the deponent never personally perceived:

> "*Rule 30(b)(6)* deponents do not necessarily testify based on personal knowledge, but the nature of this topic requires the deponent to have intricate personal knowledge or to personally investigate and interview an unknown number of percipient witnesses in detail and then testify about the personal experiences of multiple witnesses. This deponent would then potentially "bind" the government going forward on nuanced factual events in which the deponent was not involved. However, when the identities of percipient witnesses are readily available, no risk of bandying exists, and these individual percipient witnesses are the proper deponents."

Jones v. Hernandez, 2018 U.S. Dist. LEXIS 10930 (S.D. Cal. Jan. 23, 2018). This situation is entirely different.

Here, the objection does not require anyone to interview a limitless number of witnesses. Dr. Burnside testified that there existed a medical chart that had a blue cover. Moreover, Mr. Green saw Dr. Burnside and any medical staff who saw him review his medical chart. (*See* Ex. 5, Green Dep., p. 48:06-23.) Plaintiff was never provided that medical chart. Id. The relevance of the chart is that it very well may contain the reason Mr. Green was taken to see Dr. Burnside on June 6/7, 2018, and that is very important because Dr. Burnside claimed he saw Mr. Green on June 6/7, 2018

for a follow-up within 24 hours of Green visiting a vascular surgeon.[1] But Dr. Burnside's statement is obviously false because the medical records demonstrate that Green was only seen once by a vascular surgeon, almost a month prior to June 6/7, 2018, on May 5, 2018. Moreover, Plaintiff testified that he was released to medical on June 6/7, 2018, by his unit manager, as an emergency, because his toe was profusely bleeding, and he was in a lot of pain. (*See* Ex, 5, Green Dep, 51:02-52:06.)

Moreover, the relevancy of this topic becomes even stronger as to the reason Mr. Green was taken to Dr. Burnside due to the testimony of Defendants' own expert witness, Dr. Russell Samson. Significantly, Dr. Samson testified under oath that Mr. Green's bleeding seen visibly on his foot on June 6-7—alone-- **required Mr. Green to be rushed to a hospital for "urgent surgery,"** because it constituted an urgent situation. (See Ex. 4., Samson Dep. 82:05-83:16); (*see e.g.*, Samson Dep. 53:07-54:05; 59:02 to 60:02; 68:14-69:11; 69:24-72:11; 87:02-88:21, for damaging testimony to Defendants' alleged defenses to Mr. Green's claims.)

All this combined demonstrates that the discovery sought is within the "natural focus" of the topic inquiry, and thus this Court should refrain from placing a stricter burden upon Plaintiff because, and worth repeating, Mr. Green's inquiry is not "seeking much broader **discovery** than the **natural focus** of the inquiry." Taylor 2022 U.S. App. LEXIS at *9 (emphasis added).

Without question, Defendants do have a duty to reasonably investigate the whereabouts of this blue medical chart and Plaintiff has a right to depose a designee representative about the contents of this chart. In fact, and of utmost relevance, "[t]he party responding to a 30(b)(6) deposition notice 'must prepare deponents by **having them review prior fact witness deposition testimony** as well as documents and depositions, exhibits.'" Calzaturficio S.C.A.R. P.A. S.P.A. v. Fabiano Shoe Co., 201 F.R.D. 33, 37 (D. Mass. 2001) (quoting Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 639 (D. Minn. 2000)), quoted in Chick-Fil-A v. ExxonMobil Corp., 2009 U.S. Dist. LEXIS 109 588 (S.D. Fla. Nov. 10, 2009)). In this vein, Mr. Green reasonably and lawfully expects Defendants' designee to review relevant portions of Burnside's depositions and provide binding testimony on this issue under examination. Id. In that vein it is important to note that "the 30(b)(6) deponent must not only testify about facts within the organization's knowledge, but also its **subjective**

---

[1] Deposition of Dr. Burnside was cited by Defendants in their Motion, but they never provided the deposition to the Court as evidence. (*See* ECF 82-1 p. 17 #28 at which Defendants cite actual pages and lines numbers of Burnside Deposition.) Plaintiff is acquiring this deposition and should have it by Dec. 29, 2022 and will supplement.

**beliefs and opinions**. . . . [to] provide its interpretation of documents and events." <u>United States v. Taylor</u>, 16 6 F.R.D. 3 6 5, 3 61 (M.D.N.C. 1996); *see also* <u>Otero v. Vito</u>, 2006 WL 3535149 (M.D. Ga. Dec. 7, 2006); <u>Dravo Corp. v. Liberty Mut. Ins. Co.</u>, 164 F.R.D. 70-75 (D. Neb. 1995).

Indeed, "the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." <u>DHL Express (USA), Inc. v. Express Save Industries Inc.</u>, 2009 U.S. Dist. LEXIS 102981, 2009 WL 3418148 (S.D. Fla. Oct. 1 9, 2009) (internal quotations and citations omitted). <u>EEOC v. Winn-Dixie, Inc.</u>, 2010 U.S. Dist. LEXIS 53005 (S.D. Ala. May 28, 2010).  And, although "the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one…,"  that burden is essential to ensuring that "a corporation that is involved in litigation, can be fully and fairly explored." <u>Prokosch</u>, 193 F.R.D. at 638.

In this case, and again, Defendants' designee must review Burnside deposition and should talk to Burnside himself, and undertake other reasonable means of investigating this topic, to bind the GDC with its subjective beliefs, opinions, and other testimonial statements on this particularized topic area. <u>Taylor</u>, 166 F.R.D. at 361.

3. The frequency that Defendant doctors met to discuss prisoners, including Stanley Green, who were enrolled in the Chronic Illness Clinic Program. Be prepared to discuss each date that each doctor met with Stanley Green. Time frame is from March 21, 2018 through June 16, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1 *supra*** to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being "overly broad and unduly burdensome" without providing any affidavit or actual evidence to support this bald statement. Also <u>Amendia, Inc.</u>, 2012 U.S. Dist. LEXIS at *6. That established, each date that each Defendant met with Mr. Green is entirely relevant to their knowledge of his condition and response to each phase of his condition, mindful that Mr. Green has a deliberate indifference claim upon which actual knowledge/appreciation of his risk of harm is required. <u>Lavender v. Kearney</u>, 206 F. App'x 860, 863 (11th Cir. 2006) (stating, "[D]eliberate indifference is not the same thing as negligence or carelessness. Rather, a state official acts with deliberate indifference only when he disregards a risk of harm of which he is *actually aware*.")

Moreover, discussing each date whether within a medical record or not that each Defendant met with Mr. Green falls within the natural focus of the issues in this case and thus Mr. Green

should not be required to a party to show "particularized need and likely **relevance**" of this discovery being sought. <u>Taylor</u> 2022 U.S. App. LEXIS at *9 (emphasis added).

5. All dates that Stanley Green visited a vascular surgeon, including the location of the visit and the doctor's name.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being "overly broad and unduly burdensome" without providing any affidavit or actual evidence to support this bald statement. That established, Dr. Burnside claimed he saw Mr. Green for a follow-up within 24 hours of Green visiting a vascular surgeon. But Dr. Burnside's statement is obviously false because the medical records demonstrate that Green was only seen once by a vascular surgeon, almost a month prior to June 6/7, 2018, on May 5, 2018. Moreover, Plaintiff testified that he was taken on June 6/7, 2018, as an emergency because his toe was profusely bleeding and was in a lot of pain. In this context, discussing each date Mr. Green visited a Vascular Surgeon falls within the natural focus of the issues in this case and thus Mr. Green should not be required to a party to show "particularized need and likely **relevance**" of this discovery being sought. <u>Taylor</u> 2022 U.S. App. LEXIS at *9 (emphasis added).

6. All documents, including the appointment calendar for Dr. Hale Burnside, which demonstrate that Stanley Green had an appointment with Dr. Hale Burnside, and the reason for the appointment. The time frame is from June 5, 2018 through June 7, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being "overly broad as it seeks to be exhaustive," and 'GDC objects to this topic as vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 5-6)—without providing any affidavit or actual evidence to support this bald statement. Furthermore, as far as being exhaustive, Mr. Green reminds Defendants that although "the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one…," that burden is essential to ensuring that "a corporation that is involved in litigation, can be fully and fairly explored." <u>Prokosch</u>, 193 F.R.D. at 638. Also, and contrary to Defendants' false assertion that Mr. Green was not particular with respect to what he is looking for,

Mr. Green actually stated that he seeks this information because he is looking for documented answers as to "the reason" Mr. Green was sent to medical once again within less than a week of seeing a nurse.

7. The number of diabetics who were sent to an emergency room from GDCP, for any reason, and the exact reasons documented for sending said diabetic to the emergency room[.] The time period of this is from January 1, 2015, through December 31, 2018. The topic is limited to Diabetics who were (1) housed at GDCP and (2) were enrolled in the Chronic Illness Care Program.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 6-7)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. That established, knowing the reasons that diabetic prisoners were sent to an emergency room will give insight to Mr. Green's deliberate indifference claim. Here Defendants' **own expert's testimony is important**. (*See* Ex. 4., Samson Dep. 87:02-88:21; 59:02-60:02.) Moreover, requesting the reasons and timing of other GDCP Diabetics being sent to a hospital, given the facts of this case, falls within the natural focus of the issues in this case and thus Mr. Green should not be required to a party to show "particularized need and likely **relevance**" of this discovery being sought. Taylor 2022 U.S. App. LEXIS at *9 (emphasis added). And this sought discovery falls within the Eleventh Circuit's statement that "**[r]elevance** for **discovery** has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," and that "a civil litigant is generally entitled to 'any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence.'" *See* Marbury, 2022 U.S. App. LEXIS at *4-5; *see* also Akridge, 1 F.4th at 1276. And GDC focus on the time and effort it takes to get this relevant information does not excuse GDC from providing the information given that a man's leg was chopped off under extraordinary circumstances that even Defendants' own expert found way out of line. *See* Prokosch, 193 F.R.D. at 638.

8. The number of inmates who suffered amputations while being housed at GDCP. The time period of this is from January 1, 2015, through December 31, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. Though the Defendants' burden "to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one…," that burden is essential to ensuring that "a corporation that is involved in litigation, can be fully and fairly

explored." <u>Prokosch</u>, 193 F.R.D. at 638. For this reason and more, this objection should be rejected by the Court because having an accurate depiction of how many people suffered amputations while at GDCP and the circumstances surrounding those amputations can determine whether other motives such as cost played a role. In this respect GDC has a currently policy that states "The responsible Clinician will make a referral for a subspecialty consultation, diagnostic test, or therapeutic intervention only after in-house resources have been exhausted without reaching a satisfactory resolution. This procedure is applicable to all facilities that house Georgia Department of Corrections (GDC) offenders to include private and county prisons." (*See* Ex. 1.) Clearly staying in-house preserves cost and its absolutely cheaper to amputate a leg then do everything to preserve the leg through outside emergency health care services which include specialist visits and hospital stays. This topic is relevant to Mr. Green's claims.

9. The number of times an Erythrocyte Sedimentation Rate test (ESR) was ordered and received by an inmate, prior to that inmate suffering from an amputation while being housed at GDCP. To be clear, we want to know (1) all inmates who suffered from an amputation while being used [sic] at GDCP, and (2) whether an ESR was ordered ever prior to said amputation. The time period of this is from January 1, 2015, through December 31, 2018, including the redacted documentation which demonstrates this.

**RESPONSE:** We will eliminate this topic as a designee topic.

10. The number of times a C-Reactive Protein Test (CRP) was ordered and received by an inmate, prior to that inmate suffering from an amputation while being housed at GDCP. To be clear, we want to know (1) all inmates who suffered from an amputation while being used at GDCP, and (2) whether a CRP was ordered ever prior to said amputation. The time period of this is from January 1, 2015, through December 31, 2018, including the redacted documentation which demonstrates this.

**RESPONSE:** We will eliminate this topic as a designee topic.

11. The number of times intravenous antibiotics was ordered and received by an inmate, prior to that inmate suffering from an amputation while being housed at GDCP. To be clear, we want to know (1) all inmates who suffered from an amputation while being used at GDCP, and (2) whether intravenous antibiotics were ordered and received ever prior to said amputation. The time period of this is from January 1, 2013, through December 31, 2018, including the redacted documentation which demonstrates this.

**RESPONSE:** Plaintiff incorporates its response to # 7. Additionally, this subject is very relevant because Mr. Green's ulcers were not responsive to oral antibiotics and thus intravenous antibiotics were the next step. Mr. Green wants to see if any inmate was every given intravenous antibiotic and under which circumstances to better understand why this common proactive, under the facts of this case, did not occur.

12. All local orders regarding diabetic patient care for inmates such as Stanley Green who also were participating in the Chronic Illness Program. We will discuss the title, effective, date, and substance of each local order with respect to discretionary and non-discretionary duties within each local order. The time period is between March 1, 2018, and June 21, 2018.

**RESPONSE:** To save this Court's time, to the extent that Defendants rely on the case <u>Jones</u>, Mr. Green incorporates his discussion of Jones in Response # 1. That said, Defendant counsel continues to make argumentative representations that require actual testimonial **evidence**. For example, counsel argues that "no local operating procedure regarding diabetic patient care was in place during the requested time period." The problem is Mr. Green needs someone under oath, offering testimonial, binding evidence to that attorney statement. (Cf. <u>Carroll</u>, 2017 U.S. Dist. LEXIS at *35, reasoning that "statements, objections, or arguments made by the lawyers [were] not evidence in the case.)

13. All local orders pertaining to emergency medical treatment of inmates at GDCP, which were in effect between March 1, 2018 and June 21, 2018 – including local orders which supplemented GDC SOP VH30-0004 (507.04.28): Chronic Care Procedures and Protocols; GDCP SOP VH03-0005: Patient Tracking Systems; GDC SOP VH30-0006: Direct Orders; GDC SOP VH30-0008: Transcription of Medical Orders; GDC SOP 507.02.01: Health Record Management, Format and Contents; GDC SOP 507.02.03; Transfer and Retention of Health Records; GDC SOP VH31-0001: Urgent/Emergent Care Services; GDC SOP VH31-0005: Evaluation Services for Urgent or Emergent Health Care Requests. We will discuss whether these local rules exist and if they do, we will discuss the discretionary and non-discretionary duties found in each local order, along with discussing effective dates of each local order.

**RESPONSE:** See response to #12 above.

14. All written reprimands each Defendant received during their employment with GDCP, including the date and reason and the outcome. Time frame is January 1, 2013 through December 31, 2018.

**RESPONSE**: Again, there is no admissible evidence to support these statements and thus Mr. Green needs someone under oath to make these statements. To the extent that Defendants seek

to argue that that Mr. Green must go to Defendant Doctor's employer, this is legally unsound, and the Court should reject this out of hand. By law, "[u]nder Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984). This is made clear in a lesser scenario when a simple open records request is made to someone like Defendants, per O.C.G.A: "[a]dditionally, if an **agency contracts** with a private vendor to collect or maintain public records, the agency shall ensure that the arrangement does not limit public access to those records and that the vendor does not impede public record access and method of delivery as established by the agency or as otherwise provided for in this Code section." Ga. Code Ann. § 50-18-71(h). Consequently, the law demonstrates that Defendants must respond to this request because they definitely have the legal authority to obtain the records Mr. Green seeks, evidenced by their service contract with the subject entities that GDC claims holds said requested information.

15. All adverse actions taken or proposed or against each Defendant, including the date and reason and outcome. Time frame is January 1, 2013, through December 31, 2018.

**RESPONSE**: Again, there is no admissible evidence to support these statements and thus Mr. Green needs someone under oath to make these statements. To the extent that Defendants seek to argue that that Mr. Green must go to Defendant Doctor's employer, this is legally unsound, and the Court should reject this out of hand. By law, "[u]nder Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984). This is made clear in a lesser scenario when a simple open records request is made to someone like Defendants, per O.C.G.A: "[a]dditionally, if an **agency contracts** with a private vendor to collect or maintain public records, the agency shall ensure that the arrangement does not limit public access to those records and that the vendor does not impede public record access and method of delivery as established by the agency or as otherwise provided for in this Code section." Ga. Code Ann. § 50-18-71(h). Consequently, the law demonstrates that Defendants must respond to this request because they definitely have the legal authority to obtain the records Mr. Green seeks, evidenced by their service contract with the subject entities that GDC claims holds said requested information.

16. Confirm that each Defendant signed an acknowledgement form regarding each of the following: the GDC Employee Standards of Conduct; GDC SOP VH31-0001: Urgent/Emergent Care Services; GDC SOP VH31-0005: Evaluation Services for Urgent or Emergent Health Care Requests; Chronic Care Procedures and Protocols; GDC SOP VH03-0005.

RESPONSE: Again, there is no admissible evidence to support these statements and thus Mr. Green needs someone under oath to make these statements. But these are wholly relevant as Defendants' acknowledgment of these forms plays a role in Mr. Green's legal arguments that go to the extent of Defendants' knowledge that bears on their conduct toward Mr. Green. Moreover, To the extent that Defendants seek to argue that that Mr. Green must go to Defendant Doctor's employer, this is legally unsound, and the Court should reject this out of hand. By law, "[u]nder Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984). This is made clear in a lesser scenario when a simple open records request is made to someone like Defendants, per O.C.G.A: "[a]dditionally, if an **agency contracts** with a private vendor to collect or maintain public records, the agency shall ensure that the arrangement does not limit public access to those records and that the vendor does not impede public record access and method of delivery as established by the agency or as otherwise provided for in this Code section." Ga. Code Ann. § 50-18-71(h). Consequently, the law demonstrates that Defendants must respond to this topic because they definitely have the legal authority to obtain the records Mr. Green seeks, evidenced by their service contract with the subject entities that GDC claims holds said requested information.

17. All positive drug test results for each Defendant.

**RESPONSE**:  To the extent that Defendants seek to argue that that Mr. Green must go to Defendant Doctor's employer, this is legally unsound, and the Court should reject this out of hand. By law, "[u]nder Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984). This is made clear in a lesser scenario when a simple open records request is made to someone like Defendants, per O.C.G.A:  "[a]dditionally, if an **agency contracts** with a private vendor to collect or maintain public records, the agency shall ensure that the arrangement does not limit public access to those records and that the vendor does not impede public record access and method of delivery as established by the

agency or as otherwise provided for in this Code section." Ga. Code Ann. § 50-18-71(h). Consequently, the law demonstrates that Defendants must respond to this topic because they definitely have the legal authority to obtain the records Mr. Green seeks, evidenced by their service contract with the subject entities that GDC claims holds said requested information.

**18. All performance reviews for every Defendant.**

**RESPONSE**: To the extent that Defendants seek to argue that that Mr. Green must go to Defendant Doctor's employer, this is legally unsound, and the Court should reject this out of hand. By law, "[u]nder Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984). This is made clear in a lesser scenario when a simple open records request is made to someone like Defendants, per O.C.G.A: "[a]dditionally, if an **agency contracts** with a private vendor to collect or maintain public records, the agency shall ensure that the arrangement does not limit public access to those records and that the vendor does not impede public record access and method of delivery as established by the agency or as otherwise provided for in this Code section." Ga. Code Ann. § 50-18-71(h). Consequently, the law demonstrates that Defendants must respond to this topic because they definitely have the legal authority to obtain the records Mr. Green seeks, evidenced by their service contract with the subject entities that GDC claims holds said requested information.

19. Discuss the relationship between Georgia Medical College and the Georgia Department of Corrections, including whether GDOC standard operating procedures apply to employees of Georgia Medical College; who pays the Defendants; who has the ability to terminate the Defendants employment; do these Defendants have a contract with the GDOC; the contractual relationship between the GDOC and GMC, in terms of who carries the obligation to ensure proper medical care and who is liable for money damages awards.

**RESPONSE:** Mr. Green will go with Defendants answer to this one regarding scope.

20. All medical charts of Defendant Fogam, Burnside, Dreaden and Fowlkes regarding Stanley Green.

**RESPONSE:** Mr. Green adopts and incorporates its response to # 1 above.

21. All physician orders for X-rays regarding Stanley Green. Time period March 1, 2018, through June 20, 2018.

**RESPONSE:** Mr. Green simple want to see everyone physician order to know for certain that there are no further orders out there in which an x ray was order.

22. Discuss the content and meaning of all policies that govern medical staff's requirement to physically visit inmates in relation to Stanley Green. Be prepared to discuss how often medical staff visited Stanley Green for physical health purposes and point to all documentation. The time period of this is from March 1, 2018, through December 31, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 13-14)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. Furthermore, Defendants argument that Mr. Green is seeking to discuss medical staff's visit with plaintiff is off point. Green is asking to discuss the content of policies that required visits to Mr. Green, and the nature of these visits in so far as how they occurred, for example, through sick call or other means, and who made these visits. This is wholly relevant to Mr. Green's claims.

23. All policies and procedures that required the defendants to review Stanley Green's medical record as a participant in the CIC program, including the dates that his medical record(s) were reviewed and by whom.

**RESPONSE:** Jones is off point to the facts of this case and to this topic, as responded by Mr. Green in his response to # 1 above. Second, Green is not asking Defendants to interview anyone; rather, Defendant must discuss "policies and procedures" that requires a review of Mr. Green's medical chart, and this information is wholly relevant to claims of deliberate indifference. If these policies do not exist, then someone needs to testify to that and if they do exist then someone needs to testify to that existence and discuss the requirements.

24. Identify every offsite medical-professional visit undertaken by Stanley Green during his time of being housed at GDCP and be able to state the dates in which he went off site to visit a physical health professional, including all visits to off-site facilities for his foot. The time period of this is from March 1, 2018, through December 31, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly

broad, and unduly burdensome" (*see* ECF 82-1, pp 15-16)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6.

Second, Defendant insist on essentially a document-speaks-for itself argument through its "all record are available through discovery." But Mr. Green has a right to discuss medical records provided, or other evidence provided, as this Court has stated: "[w]ith respect to relevant documents, it is not a valid objection in the deposition of a witness who has or may have some relevant knowledge concerning the document or its subject matter, that the document "speaks for itself". The questioning attorney ordinarily is entitled to inquire of a witness concerning his or her relevant knowledge concerning the contents and subject matter of a document." Collins v. Int'l Dairy Queen, Civil Action File No. 94-95-4-MAC (WDO), 1998 U.S. Dist. LEXIS 8254, at *7 (M.D. Ga. June 3, 1998).

25. All emails between jail staff and medical staff regarding Stanley Green's medical history and treatment, including the date, time, and content of those communications. Be prepared to offer binding testimony on the manner in which these communications were documented and the location of these communications. The time period of this is from March 1, 2018, through December 31, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1 *supra*** to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, p. 16)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. Second, Jones is off point to the facts of this case and to this topic, as responded by Mr. Green in his response to # 1 above. Also obviously, Defendants understand that Mr. Green is speaking about prison staff, so that should not be an issue, as Defendants have correctly interpreted jail staff to mean prison staff. Moreover, as Mr. Green has pointed out, the fact that a topic may be onerous on Defendants does not relieve them on their duty to, in this instance, locate and produce these emails and discuss them as requested.

26. The full name of the unit manager, including unit manager "Denny" (*see* paragraph 83 of enclosed complaint) who was on duty June 5-7, 2018, and was charged with managing the housing unit of Mr. Green on those dates.

**RESPONSE:** Defendants did not provide the full name because they failed to provide the middle name, with a commonsense knowledge that the full name makes it much easier to locate this person.

27. The complete movement history and reason for move regarding Mr. Green, including his movement history and reason for move from June 5-7, 2018. Be able to point to all documents that show this movement history and reason thereof.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, p. 17)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. Second, Jones is off point to the facts of this case and to this topic, as responded by Mr. Green in his response to # 1 above. Also, to save this Court's time and resource, Mr. Green relies on portions of his response to #1 above to support the relevancy of documents which demonstrate the reason he was moved on June 6/7, 2018. Moreover, Defendants' lawyer cannot simply state that all movement to and from medical is not necessarily recorded; someone must testify under oath to this because counsel been doing this for a while now and has never heard anything such as this—to the contrary, vital to the proper functioning (safety) to a prison is tracking every step a prisoner makes and especially if they are moving to different units for medical care or housing, for example. GDC needs to put someone under oath to support that lawyer statement so it can be documented for years to come. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6.

28. Discuss the criteria that must be met prior to referring Stanley Green for a subspecialty consultation, diagnostic test, or therapeutic intervention. The time period is March 1, 2018, through June 20, 2018.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 17-18)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. Second, Jones is off point to the facts of this case and to this topic, as responded by Mr. Green in his response to # 1 above.

29. The name and rank (e.g., unit manager) of the person who ordered Mr. Green to the medical unit, and the reason that said person ordered Mr. Green to the medical unit. The time period for this is between June 5, 2018, and June 7, 2018. Be able to identify all documents that support the answer to this question including movement logs.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, p. 18)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. Second, Jones is off point to the facts of this case and to this topic, as responded by Mr. Green in his response to # 1 above.

Next, Defendants argue that "to the extent that Plaintiff seeks to impose upon GDC an obligation to interview witnesses and relay that testimony as a 30(b)(6) designee, GDC objects." Defendants are wrong again for the same reason as stated earlier: "[w]ith respect to relevant documents, it is not a valid objection in the deposition of a witness who has or may have some relevant knowledge concerning the document or its subject matter, that the document "speaks for itself". The questioning attorney ordinarily is entitled to inquire of a witness concerning his or her relevant knowledge concerning the contents and subject matter of a document." Collins, 1998 U.S. Dist. LEXIS at *7 (M.D. Ga. June 3, 1998).

30. Discuss the means of communicating the Radiology Report that was electronically reviewed by Dr. James Zimmerman on 6/12/2018 to the requesting facility, including GDOC and Georgia Diagnostic Prison; including all persons to whom the report was sent to, when the report was sent, who read and reviewed the report, and the date and time the report was read, including but not limited to Defendants Fogam, Fowlkes and Burnside.

**RESPONSE:** Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 18-19)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. Second, Jones is off point to the facts of this case and to this topic, as responded by Mr. Green in his response to # 1 above. GDC can testify to who at GDC read and/or reviewed the report by simply investigating the manner the report was sent to GDC and hat digital information demonstrates who received/read/reviewed the report. Plaintiff will keep his questions limited to this.

## II. The requests for documents are overly broad and unduly burdensome.

### RESPONSES 1-3

Defendants assert in their Motion they do "not have responsive documents for Plaintiff's first three requests. To the extent Plaintiff seeks to impose upon GDC an obligation to secure documents of another agency, i.e., Defendants' employer(s), GDC objects and seeks a protective order from this court." (*See* ECF 82-1 p. 19 §2) This is malarkey, and the Court should reject this out of hand. By law, "[u]nder Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Searock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984). This is made clear in a lesser scenario when a simple open records request is made to someone like Defendants, per O.C.G.A:  "[a]dditionally, if an **agency contracts** with a private vendor to collect or maintain public records, the agency shall ensure that the arrangement does not limit public access to those records and that the vendor does not impede public record access and method of delivery as established by the agency or as otherwise provided for in this Code section." Ga. Code Ann. § 50-18-71(h). Consequently, the law demonstrates that Defendants must respond to these request because they definitely have the legal authority to obtain the records Mr. Green seeks, evidenced by their service contract with the subject entities that GDC claims holds said requested information.

### RESPONSES 4-6

Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1 *supra*** to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 2-4)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. The Court should not accept attorney statements as evidence. GDC needs to testify to these topics. Defendants simply have not met their burden, claiming that the 2002 Clinical Update 02.05 was not in use in 2018 simply does not suffice as evidence at all. Id. Moreover, reference to this was made in GDC's Policy governing the treatment of inmates with Chronic Illness, under "authority," with an effective date in 2022. (*See* Ex. 2.) This same  "Clinical Update 02.05 - Cost Effective Laboratory and Clinical Practices—September 6, 2002" is cited under "Related Directives" in GDC SOP VH30-0004, Chronic Care Procedures and Protocols" (*See* Ex. 3.)

The relevance is that this "Clinical Update 02.05 - Cost Effective Laboratory and Clinical Practices," was at least effective as a directive in 2002, and guided GDC's 2004 policy as a directive, and is cited as authority as recent as 2022 by GDC SOP. (*See* Exhbs 2, 3.) Consequently Mr. Green would like to examine this '**directive**' and '**authority**' to determine whether there existed governing practices, such as "cost effective" practices, that applied to the treatment of chronic care patients, such as Mr. Green. If yes, then these "cost effective" practices are wholly relevant to Mr. Green's claim of deliberate indifference, inter alia, because you cannot deny adequate medical attention due to cost saving practices that places an inmate's health in dire risk, such as the case, here. *See e.g.*, Estelle v. Gamble, 429 U.S. 97, 98, 97 S. Ct. 285, 288 (1976). **And significantly, with Defendant own expert Samson stating Green should have been rushed to 'urgent surgery' on June 6/7. 2018, then Mr. green really needs to explore this relevant issue as to why he was not and a probable reason could be "cost effective" practices**. (*See* Ex. 4., Samson Dep. 82:05-83:16); (*see e.g.*, Samson Dep. 53:07-54:05; 59:02 to 60:02; 68:14-69:11; 69:24-72:11; 87:02-88:21, for damaging testimony to Defendants' alleged defenses to Mr. Green's claims.)

Regarding request # 5, Mr. Green will abandon this request. Regarding request # 6, Mr. Green is simply referring to all policies and procedure that dealt with referring inmates to outside medical providers that were in effect from March 1, 2018 through June 20, 2018. That should be no problem, and once again, Defendant failed to provide an affidavit or any actual evidence demonstrating that they cannot provide this information, and the content of these policies—regarding the referral to inmates to outside facilities for medical treatment—is obviously relevant.

**RESPONSES 7-8**

Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1 *supra*** to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 2-4)—without providing any affidavit or actual evidence to support this bald statement. Amendia, Inc., 2012 U.S. Dist. LEXIS at *6. GDC needs to testify to these topics. Defendants simply have not met their burden, claiming that GDC "should not" have to testify to these topic areas.

**RESPONSE 9**

Defendants' objection is unsupported by the law. To save the Court time, Plaintiff **fully incorporates its response to Objection 1** *supra* to the extent that, to support their objection, Defendants here again make broad allegations of Mr. Green's topic being 'vague, overly broad, and unduly burdensome" (*see* ECF 82-1, pp 2-4)—without providing any affidavit or actual evidence to support this bald statement. <u>Amendia, Inc.</u>, 2012 U.S. Dist. LEXIS at \*6. GDC needs to testify to these topics. Defendants simply have not met their burden, claiming that "there are no local operating procedures" through an attorney, which is not evidence as cited throughout this Response.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully asks this Honorable Court to DENY the Motion to Quash and for Protective Order and allow the 30(b)(6) deposition to go forward as submitted.

Respectfully submitted this 28th day of December 2022.

/s/ MARIO WILLIAMS
Mario Williams
(Ga Bar No. 235254)

HDR, LLC
44 Broad Street NW Suite 200
Atlanta, GA 30303
P: 404-254-0442 F: 404-935-9391
mwilliams@hdrattorneys.com

/s/ DAVID BETTS
David Betts
(Ga Bar No. 055850)

BETTS & ASSOCIATES
44 Broad Street NW Suite 200
Atlanta, GA 30303
P: 404-254-0442 F: 404-935-9391
davidbetts@bettslaw.net

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **STANLEY GREEN** | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil Action No.:** |
| | ) | **5:20CV00195-MTT** |
| | ) | |
| **YOUNG MI DREADEN, et al.** | ) | |
| | ) | |
| *Defendants.* | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO QUASH AND FOR PROTECTIVE ORDER to all counsel of record via email.

Respectfully submitted this 28th day of December 2022.

/s/ Mario B. Williams
Mario B. Williams
Ga. Bar No. 235254

**HDR LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303
(404) 254-0442/(404) 577-0080 FAX
mwilliams@hdrattorneys.com